IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA BARNES, | No. C 09-03935 SI |
| Plaintiff, | **ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT AND GRANTING MOTION TO REMAND FOR FURTHER PROCEEDINGS.** |
| v. | |
| MICHAEL J. ASTRUE, | |
| Defendant. | |

The parties have filed cross-motions for summary judgment in plaintiff's appeal of a final decision by the Commissioner of Social Security denying plaintiff benefits. In the alternative, plaintiff seeks remand of this matter for a new hearing. Based upon the Court's review of the parties' papers and administrative record, the Court hereby DENIES plaintiff's motion for summary judgment, DENIES defendant's motion for summary judgment and GRANTS plaintiff's motion to remand this matter for further administrative proceedings.

**BACKGROUND**

**I.      Procedural History**

Plaintiff filed applications for supplemental security income ("SSI") and disability insurance benefits ("DIB") on November 1, 2004 based on degenerative disc disease of the lumbar spine, leg stiffness, fibroids, hypertension, and an anxiety disorder with depression. Administrative Record ("AR") at 157-165, 235. Plaintiff alleged her disability began on September 23, 2004. After plaintiff's claims were denied, plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). AR at 109. On September 12, 2006, the ALJ issued an unfavorable decision regarding plaintiff's claims.

AR at 81-90. The Appeals Council reviewed the ALJ's decision and remanded the case for further proceedings. AR at 93-95. In 2006, while the Appeals Council reviewed the ALJ's decision, plaintiff submitted a second set of applications for SSI and DIB. AR at 589-599. A hearing on the remand and 2006 applications took place on November 17, 2008. AR at 978. On March 11, 2009, the ALJ issued another unfavorable decision regarding plaintiff's claims. Plaintiff requested a review of the ALJ's decision but the Appeals Council declined review. AR at 14-16. On August 26, 2009, plaintiff filed this action for judicial review. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## II.     Factual and Medical History

Plaintiff was born on January 5, 1962, has a high school education and worked as a food server, after school aide, and a pre-school teacher. AR at 237. From 2002 to 2003, plaintiff received workers' compensation payments for a back injury incurred during her employment as a food server. AR at 980. Plaintiff began working as a pre-school teacher in 2003. Her duties as a pre-school teacher often required plaintiff to bend and lift her students. AR at 987. Plaintiff was laid off in 2004 after informing the school of the work restrictions imposed by her doctor. AR at 985.

On March 18, 2002, an MRI indicated mild disc desiccation and no evidence of disc herniation, spinal stenosis, spondylolysis or a spondylolisthesis. AR at 419. On November 11, 2003, Dr. Soderling, one of plaintiff's treating physicians, examined plaintiff and reported findings of an attenuated range of motion and decreased sensation in plaintiff's anterior thighs and lateral legs. Dr. Soderling diagnosed plaintiff with Herniated Nucleus Pulposus based in part on plaintiff incorrectly informing Dr. Soderling that her March 2002 MRI results had shown a Herniated Nucleus Pulposus. AR at 456. In 2005 and 2006, Dr. Soderling reported plaintiff having an antalgic gait, stooped posture, and pelvic obliquity. AR at 439, 457. On March 1, 2006, he concluded that plaintiff could occasionally and frequently lift and carry no more than 10 pounds, stand or walk for less than 2 hours in an 8-hour workday, must periodically alternate sitting and standing to relieve pain or discomfort, and could only kneel occasionally but could never climb, balance, crouch, crawl, or stoop. AR at 391-392. On March 29, 2006, Dr. Soderling was provided with the actual March 2002 MRI results and as a result altered his diagnosis to Chronic Lumbosacral strain with either Sciatica or Radiculopathy but maintained his initial

assessment of plaintiff's limitations. AR at 457. Dr. Soderling prescribed Vicodin and Norco to relieve plaintiff's back pain in addition to a number of other medications to treat muscle inflammation, stomach discomfort caused by medications, and muscle tension. AR at 236.

Dr. Mariotti, a non-treating examiner, conducted an orthopedic evaluation of plaintiff on January 20, 2005 and reported plaintiff had a normal gait and range of motion with a mild C-shaped curvature of the lumbar spine. AR at 333-334. Dr. Mariotti concluded that plaintiff's "primary problem is that she hurts," and that "this lady has essentially no physical impairment and can carry out all the activities of daily living." AR at 334.

In 2006, plaintiff was treated at the Tiburcio Vasquez Health Center and diagnosed with anxiety disorder and depression. AR at 697. In 2007 and 2008, the Tiburcio Vasquez Health Center continued to diagnose plaintiff with depression and prescribed Celexa. AR at 808, 818.

Dr. Amin, a consultative psychiatrist, examined plaintiff on January 3, 2007. AR at 728. Dr. Amin diagnosed plaintiff as suffering from major depression with difficulty staying asleep. AR at 733. Dr. Amin's functional assessment of plaintiff concluded that plaintiff is "mildly limited in her ability to maintain concentration, attention, persistence and pace in a normal workplace setting [and] . . . mildly limited in her ability to associate with day-to-day work activities." *Id.*

Dr. Sharma, a non-treating examiner, examined plaintiff on January 13, 2007. AR at 736. Based on the physical exam, Dr. Sharma concluded that plaintiff "should be limited in lifting 10 pounds frequently [and] 20 pounds occasionally" with standing, walking, and sitting limited to 6 hours per day. AR at 740. Dr. Sharma also noted that bending and stooping should be done occasionally and concluded that plaintiff had no limitations in holding, fingering or feeling objects. *Id.*

In April 2007, Dr. Gupta evaluated plaintiff and conducted an MRI of plaintiff's lumbar spine. AR at 922. According to Dr. Gupta's January 2008 letter, the MRI showed increased degenerative changes and progression. *Id.* Dr. Gupta noted that plaintiff's condition worsened because of her duties as a pre-school teacher. Dr Gupta concluded that it would be reasonable for plaintiff's condition to preclude her from heavy work. *Id.*

In 2008, Dr. Gest, plaintiff's new treating physician, explained that plaintiff "is disabled and unable to obtain work in the open labor market." Dr. Gest based his conclusion on plaintiff's "injuries

to her lumbar spine as documented on her MRI dated 05/04/2007." AR at 917. Dr. Gest explained that plaintiff's injury has reduced her ability to sit, stand, or walk on a prolonged basis and precludes plaintiff from bending, kneeling, squatting, crouching, or climbing "even on an occasional basis." *Id.*

Dr. Ables is an Orthopedic Surgeon and Pain Management Specialist. AR at 693. In 2007 and 2008 Dr. Ables treated plaintiff and concluded that plaintiff "has limited range of motion in the lumbosacral spine due to pain" and positive straight leg raising. AR at 969. He diagnosed plaintiff with "chronic low back pain, lumbar strain, sciatica, spinal stenosis and herniated disk." AR at 693.

### III.   ALJ's Findings

The ALJ found that plaintiff has severe impairments in the form of degenerative disc disease of the lumbar spine and fibroids but does not have a severe mental impairment. AR at 23. The ALJ concluded that plaintiff "does not have an impairment or combination of impairments that meet or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1," and found that the plaintiff has the ability to perform light work and is capable of performing her past relevant work. AR at 24-27.

### LEGAL STANDARD

A district court's review of a disability determination is limited, and a final administrative decision may be altered "only if it is based on legal error or if the fact findings are not supported by substantial evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir. 1987). Substantial evidence is that relevant evidence in the entire record "which a reasonable person might accept as adequate to support a conclusion." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). Substantial evidence consists of "more than a mere scintilla but less than a preponderance." *Young v. Sullivan*, 911 F.2d 181, 183 (9th Cir. 1990). The Court must consider the entire record, including evidence that both supports and detracts from the ALJ's decision. *See Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). However, the ALJ's decision must be upheld if the evidence is susceptible to more than one rational interpretation. *Allen v. Sec'y of Health and Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984).

4

The reviewing court has discretion to remand a case for further evidence, or to award benefits. *Moore v. Comm'r Soc. Sec. Admin.*, 278 F.3d 920,926 (9th Cir. 2002). If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. *See Lewin v. Schweiker*, 654 F.2d 631,635 (9th Cir. 1981).

**DISCUSSION**

Plaintiff alleges that the Commissioner's decision did not rest on substantial evidence. The Court will address each of plaintiff's contentions in turn.

**I.     The ALJ Properly Found that Plaintiff Fails to Meet or Equal a Listed Impairment**

The ALJ followed the five-step evaluation process required by 20 C.F.R. section 416.920(b). AR at 24. Plaintiff contends that the ALJ erred at step three of the process because "the ALJ did not consider the 'combined effect' of all the claimant's medical impairments when he determined that she does not 'meet or equal' a listing." Pl.'s Br., at 17:21-22. Defendant argues that plaintiff failed "to present any theory as to how she met any one of the listings." Df.'s. Br., at 3:12-13.

It is the claimant who has the burden of proving that her impairment or combination of impairments meets or equals the listing. *See* 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal a listed impairment, plaintiff has the burden of showing that she meets each and every element described in the listing. *See* 20 C.F.R. § 404.1525(d); *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Plaintiff failed to meet this burden in her motion for summary judgment. Plaintiff does not list the requirements of the listing or explain how the ALJ erred other than arguing that "the ALJ did not consider all the relevant evidence." *Id.* The Ninth Circuit holds that an ALJ's failure to consider equivalence is not error when the plaintiff did not offer any theory as to how her impairments combined, equaled a listed impairment. *See Lewis v. Apfel*, 236 F.3d 503,514 (9th Cir. 2001); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (rejecting the claimant's argument that the ALJ was required to state why claimant failed to satisfy every different section of the listing of impairments); *see also Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (explaining that an ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination unless the

5

claimant presents evidence in an effort to establish equivalence). Plaintiff failed to articulate her argument and meet her burden.

Plaintiff also contends that pursuant to Social Security Ruling 96-6p, the ALJ was required to obtain the opinion of a medical expert on the listing issue. Pl.'s Br., at 18:6-15. Social Security Ruling 96-6p, however, gives the ALJ discretion in determining whether the opinion of a medical expert is needed. *See* Social Security Ruling 96-6p. The ALJ in this case exercised his discretion in accordance with Social Security Ruling 96-6p.

## II. The ALJ Properly Assessed Plaintiff's Mental Impairment as "Non-Severe"

Plaintiff contends that the record as a whole establishes that she has "significant psychiatric issues of depression and anxiety" and argues that her treating and examining doctors, in addition to her anti-depression medications, support a finding of a severe mental disorder. Pl.'s Br., at 13:25-28. Defendant contends that the ALJ correctly classified plaintiff's mental impairment as non-severe and supported his finding with substantial evidence.

At step two of the disability evaluation, the ALJ noted that the plaintiff was diagnosed with an anxiety disorder and depression in November 2006. AR at 23. The ALJ also noted the January 2007 evaluation of Dr. Amin, a consultative psychiatrist. *Id.* The ALJ stated that:

> Dr. Amin diagnosed a major depressive disorder but found that the claimant was only mildly limited in her abilities to maintain concentration, attention, persistence and pace in a normal work place setting and to associate with day-to-day work activities including attendance and safety and was otherwise unlimited in her capacity for work on a psychiatric basis. The claimant subsequently received treatment at Tiburcio Vasquez Heath Center in 2007 for depression but February 2008 treatment records indicated that she was not receiving therapy at that time. Consequently, while there is evidence of intermittent treatment for depression, no mental health practitioner has found the claimant unable to work on the basis of her mental condition.

*Id.* The ALJ concluded that while there is "evidence of intermittent treatment for depression," plaintiff does not have a severe mental impairment. *Id.* The ALJ also evaluated plaintiff's mental impairment in accordance with section 12.00C of the Listing of Impairments. *See id.*

The Court finds that the medical evidence is equivocal, and that the ALJ's decision that plaintiff's mental impairment was not severe is supported by substantial evidence. Consistent with the Ninth Circuit, the ALJ's decision must be upheld if the evidence is susceptible to more than one rational

6

interpretation. *Allen*, 726 F.2d at 1473.

### III. The ALJ Improperly Assessed Plaintiff's RFC

The ALJ's evaluation of a claimant's residual functional capacity ("RFC") is upheld so long as it is supported by substantial evidence and the decision is a rational interpretation of the record evidence. *Bray v. Comm'r of Social Security Admin.*, 554 F.3d 1219, 1226 (2009). At the fourth and fifth steps of the sequential evaluation process, the ALJ determined that plaintiff has the residual capacity to perform light work and is capable of performing her past relevant work as a preschool teacher and a cafeteria worker. AR at 26, 27.

#### A. The ALJ Properly Assessed Plaintiff's Credibility

Plaintiff contends that the ALJ improperly found that plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." AR at 27. The ALJ noted that:

> despite alleging disabling pain, the claimant's medical records describe only conservative treatment for her back complaints since 2001. Moreover, although alleging disabling depression and anxiety, there is no evidence the claimant has ever sought or received ongoing, consistent care from a mental health practitioner. The claimant has also asserted that she is unable to work due to the side-effects of her medication and must stay in bed all day at times. However, her treatment records fail to document continuing complaints to that effect. Finally, I note that while the claimant has reported that her daily activities are limited because of her symptoms, she has also reported that she can do some household chores, run errands and drive.

*Id.* The ALJ's credibility determinations are relevant to the determination of plaintiff's residual functional capacity and ability to perform other work.

Plaintiff argues that the ALJ improperly rejected plaintiff's subjective complaints of pain by describing plaintiff's treatment as "conservative," despite several pain medications plaintiff has taken. Plaintiff also contends that the ALJ improperly based his decision on his perception of plaintiff's activities of daily living and failed to support his credibility finding "with clear references to specific parts of the record that he believed contradicted the claimant." Pl.'s Br., at 12:1-2.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible,

7

the ALJ must first find whether the claimant's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingerfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Then, the ALJ can reject the claimant's testimony about the severity of her symptoms "only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Here, the ALJ found that plaintiff's impairments could reasonably be expected to produce the alleged symptoms, fulfilling the first requirement, and thus the ALJ was required to provide clear and convincing reasons for discrediting plaintiff's subjective complaints. "[T]he Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints," and may not rest on general findings. *Id.* "It is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings." *Id.* (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986)).

The Court finds that the ALJ met this standard by basing his credibility determination on several reasons. First, the ALJ noted plaintiff's conservative treatment for her back pain. AR at 27. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"). Second, the ALJ states that plaintiff's complaints regarding the side-effects of her medication are unsubstantiated. *Id.* Finally, the ALJ noted that plaintiff is able to independently perform some household chores, run errands and drive. *Id.*

Here, the ALJ did point to evidence in the record to support his finding that plaintiff was not credible. Consistent with the Ninth Circuit case law, and in light of the substantial evidence cited for the ALJ's credibility determination, this Court "may not engage in second-guessing" and must uphold the ALJ's credibility finding. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

### B. The ALJ Improperly Rejected a Treating Source Opinion

Plaintiff argues that the ALJ erred in rejecting the opinions of plaintiff's treating physicians and

8

in failing to resolve an ambiguity by not re-contacting one of plaintiff's treating physicians. Defendant contends that the ALJ gave valid reasons, based on substantial evidence, for rejecting the opinions of plaintiff's treating physicians.

Generally, because a treating physician has had a greater opportunity to know and observe the patient as an individual, the ALJ must give greater weight to the opinion of the treating physician than to the opinion of other doctors. *See Lester*, 81 F.3d at 833. In the Ninth Circuit, "[i]f the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Swanson v. Secretary*, 763 F.2d 1061, 1065 (9th Cir. 1985).

Here, the ALJ rejected the assessments of treating physicians, Dr. Soderling, Dr. Abeles, and Dr. Gest in favor of consultative examiners Dr. Gupta, Dr. Mariotti, and Dr. Sharma. In dismissing the assessment offered by Dr. Soderling, the ALJ stated:

> I note that his findings regarding the claimant's work capacity were based on an erroneous assumptions regarding the March 2002 MRI findings. In fact, Dr. Soderling's conclusions were based entirely upon the claimant's subjective self-report. Moreover, I give no weight to Dr. Soderling's conclusions given the fact that even after he was informed of the actual results of the March 2002 MRI, he altered his findings regarding the claimant's work capabilities to reflect the actual MRI results.

AR at 26. The ALJ therefore did not err in not giving Dr. Soderling's opinion controlling weight because Dr. Soderling's opinion was not only suspect given Dr. Soderling's failure to adjust his assessment of plaintiff's limitations, but it was not well supported by clinical data. In this case, the ALJ set out a detailed and thorough explanation of his finding by providing clear reasons for rejecting Dr. Soderling's opinion. *See* AR at 24-27.

The ALJ rejected Dr. Abeles's opinion based on the inconsistency found in Dr. Abeles's assessments of plaintiff's work limitations. The ALJ noted that "while Dr. Abeles found the claimant limited in her capacity for work following the May 2007 MRI, he subsequently found unlimited in her capacity for work on the basis of the same findings." AR at 27. Thus, the ALJ provided a clear reason for rejecting Dr. Abeles's opinion.

9

However, in rejecting Dr. Gest's opinion, the ALJ noted that Dr Gest's "conclusions were based, in part, on the claimant's psychiatric condition," and "it is impossible to ascertain the degree to which Dr. Gest . . . based his work limitations on the claimant's mental condition." *Id.* Plaintiff argues that Dr. Gest's opinion was based on plaintiff's physical limitations. However, given the ALJ's ambiguity on the point, pursuant to 20 C.F.R. section 404.1512(c), the ALJ was required to re-contact Dr. Gest to resolve the question. Pl.'s Br. at 15:26-16:8. Defendant contends that the "ALJ is required to recontact a source only when there is insufficient evidence in the record for the ALJ to reach a determination." Df.'s Br., at 8:26-27.

Plaintiff, however, has the better of the argument: "[The ALJ] will seek additional evidence or clarification from your medical source when the report from your medical source contains *a conflict or ambiguity* that must be resolved." 20 C.F.R. § 404.1512(e)(emphasis added). Here, the ALJ noted an ambiguity in Dr. Gest's conclusions, and therefore is required to recontact Dr. Gest to determine the degree to which Dr. Gest based his evaluation on plaintiff's mental condition. If the ALJ finds that Dr. Gest did not base his conclusions on plaintiff's mental condition, then the ALJ must give Dr. Gest's opinion proper consideration as a treating source.

### C.     The ALJ Presented a Complete Hypothetical Question to the Vocational Expert

Finally, plaintiff argues that the ALJ's hypothetical questions presented to the vocational expert do not reflect the record as a whole. Pl.'s Br. at 20. Defendant contends that the "ALJ was not required to include . . . limitations that he did not find credible." Df.'s Br. at 9: 27-28. The Ninth Circuit holds that "[h]ypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant, including, for example, pain and an inability to lift certain weights." *Gamer v. Secretary of Health and Human Services*, 815 F.2d 1275,1280 (9th Cir. 1987).

Here, the plaintiff specifically contends that the ALJ's hypothetical questions failed to adequately address plaintiff's mental condition. Contrary to plaintiff's argument, the ALJ's third hypothetical required the vocational expert to consider the plaintiff's ability to work "if the depression had been found to be a severe impairment." AR at 1001. Thus, in light of the ALJ's findings, the ALJ presented complete hypothetical questions to the vocational expert. On remand and consistent with this

10

United States District Court
For the Northern District of California

order, however, if the ALJ's decision regarding Dr. Gest's opinion is altered, the ALJ must reevaluate plaintiff's RFC accordingly.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES plaintiff's motion for summary judgment, DENIES defendant's cross-motion for summary judgment, and GRANTS plaintiff's alternative motion for remand for further administrative proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated: February 3, 2011

SUSAN ILLSTON
United States District Judge